UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TARALE DUNCAN,

                    Petitioner,                    Case No. 1:05-cv-292

v.                                                 Honorable Robert J. Jonker

KENNETH McKEE,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving consecutive terms of 12 to 18 years and 2 to 4 years, imposed by the Ingham County Circuit Court on February 19, 2003, after a jury convicted Petitioner of armed robbery, MICH. COMP. LAWS § 750.529, and assault with a dangerous weapon, MICH. COMP. LAWS § 750.82, respectively.  In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

I.    DURING DELIBERATIONS, THE JURY ASKED WHETHER "AN ITEM RESEMBLING A GUN MEET[S] THE DEFINITION OF HANDGUN IF PERCEIVED AS REAL BY THE VICTIM IN THE FOURTH ELEMENT" OF THE FELONIOUS ASSAULT INSTRUCTION.  THE TRIAL COURT ERRED WHERE IT RESPONDED BY REPEATING THE INSTRUCTIONS FOR FELONIOUS ASSAULT, RATHER THAN ANSWERING WITH A SIMPLE "NO."  THE TRIAL COURT DENIED MR[.] DUNCAN HIS RIGHT TO A PROPERLY INSTRUCTED JURY. THE CONVICTIONS SHOULD BE REVERSED.

II.   THE TRIAL COURT ERRED WHERE IT SCORED POINTS FOR OV 1 - "AGGRAVATED USE OF A WEAPON" - AND OV 2 - "LETHAL POTENTIAL OF WEAPON POSSESSED" - WHERE THE JURY DETERMINED THAT MR. DUNCAN DID NOT POSSESS A FIREARM. THE COURT'S ERROR RESULTED IN A SUBSTANTIAL INCREASE

IN THE SENTENCING GUIDELINES AND VERY LIKELY IN AN
INCREASE OF THE SENTENCE.    THE MATTER SHOULD BE
REMANDED FOR RESENTENCING.

Respondent has filed an answer to the petition (docket #10) stating that the grounds should be denied

because they are either procedurally defaulted or noncognizable state law claims.  Upon review and

applying the AEDPA standards, I find that ground one is procedurally barred and ground two is

noncognizable and without merit.  Accordingly, I recommend that the petition be denied.

## Procedural History

### A.  Trial Court Proceedings

The state prosecution arose from an armed robbery in November 2002.  Petitioner was

charged with one count of armed robbery, one count of felonious assault and one count of possession

of a firearm during the commission of a felony.  Petitioner was tried before a jury beginning

January 21, 2003, and concluding on January 27, 2003.

The facts supporting the convictions were recited as follows by the Michigan Court

of Appeals:

> This case stems from an armed robbery in November 2002 in which
> defendant allegedly approached a female as she left a Lansing Township convenience
> store and took her purse at gunpoint.  Another male customer heard the commotion
> and heard the victim scream that she had been robbed.  He chased after defendant,
> who turned around, made a threatening remark, and pointed a pistol at the pursuer.
> A female who was in the store parking lot also witnessed the robbery, saw the male
> customer pursue defendant, and then return to the parking lot.  She drove on the
> nearby streets in her car, encountered defendant, who ran in front of her car, and then
> asked her whether she had reported him to the police.  The female witness also saw
> a gun in defendant's hand.  Defendant was later tracked to a vacant house where he
> was hiding in the attic and was apprehended.
>
> Police officers recovered the robbery victim's social security card and a
> telephone calling card from her purse in the attic where they found defendant.
> Articles of clothing found in the house included a hat identified by witnesses as

matching the hat defendant wore the day of the robbery.  After defendant was apprehended, the police found a car loaned to defendant by his girlfriend, parked in the convenience store lot.

(MCOA Op. at 1.)

As the Michigan Court of Appeals noted, several witnesses testified at trial that they saw Petitioner holding a gun.  The victim, Tracy Rene Foil, testified that she had stopped at a convenience store to pick up a half-gallon of milk and a two-liter bottle of Pepsi.  When she left the store, she had $15.00 and some change, which she placed in her purse.  (Tr. I, 16-17.)  Foil testified that the purse also contained her driver's license, check book, credit cards, social security card, an AT&T calling card and assorted papers.  (Tr. I, 17-18.)  As she left the store, she noticed a person leaning against the wall of the store, whom she later identified as Petitioner.  (Tr. I, 18, 19.)  When she started to walk away, Petitioner approached her and said, "Give me your purse."  She said, "No."  Petitioner then reached for her purse and Foil saw Petitioner had a gun in his left hand.  (Tr. I, 18.)  The gun was mostly covered with a white cloth, but Foil saw about two inches of the barrel pointed at her chest area.  (Tr. I, 19.)  Foil was experienced with guns because her father owned several handguns and shotguns, which she had used in the past.  (Tr. I, 19.)  Foil testified that the protruding barrel of the gun was black, and, based on her experience, she believed the gun to be real.  (Tr. I, 19, 35, 42-43.)  Foil was unable to identify the type of gun.  (Tr. II, 35, 49.)

Mae Finch testified that she was in her parked car in the lot of the party store when she saw a man run up and snatch a woman's purse.  (Tr. II, 52.)  She saw another man run after the thief and return shortly thereafter.  (Tr. II, 53.)  Finch drove her car from the lot and followed south on Clare Street, where she had seen the robber run.  (Tr. II, 53.)  Finch got to the next block, Washington Street, where she saw the man run across the street and into an open parking lot.  She

- 3 -

had her window down, and she stopped the car.  The man called her to approach, but she declined.
She saw he had a gun with a white wash cloth over the top.  She could only see three or four inches
of the gun's black barrel.  (Tr. II, 54.)  The man said, "Did you tell on me, did you tell on me?"  She
responded, "The cops are coming."  The man took off running.  (Tr. II, 55.)  Finch identified the man
as Petitioner.  (Tr. II, 55.)  Finch backed her car up and returned to the store.  (Tr. II, 56.)

Darrin Herp testified that he was a customer inside the party store when he heard a
woman scream that she was being robbed.  The victim pointed at the man running away, and Herp
ran after him.  (Tr. II, 90-91.)  Herp testified that he was only a few feet away from the robber when
the robber turned and pointed a handgun at Herp's chest, saying, "[k]eep chasing me, mother
fucker."  (Tr. II, 91, 95.)  Herp testified that the handgun was black, and it had a white handkerchief
or rag that was partially covering it.  (Tr. II, 92-93.)

At the conclusion of trial, on January 27, 2003, the jury found Petitioner guilty of
armed robbery and felonious assault, but not guilty of possession of a firearm during the commission
of a felony.  (Tr. IV, 22.)  On February 19, 2003, Petitioner was sentenced to serve concurrent terms
of 12 to 18 years and 2 to 4 years.  (Sentencing Transcript, ("S. Tr."), 28, docket #18.)

### B.  Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals.  His brief, which
was filed by counsel on October 13, 2003, raised the same two issues raised in this application for
habeas corpus relief.  (See Def.-Appellant's Br. on Appeal, docket #19.)  By unpublished opinion
issued on May 13, 2004, the Michigan Court of Appeals rejected all appellate arguments and
affirmed Petitioner's convictions and sentences.  (See 5/13/04 Mich. Ct. App. Opinion ("MCOA
Op."), docket #19.)

- 4 -

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals. By order entered November 22, 2004, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #20.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the

- 5 -

decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.     Ground One: Erroneous Instruction

In his first ground for habeas relief, Petitioner contends that the trial court erred in responding to a jury question whether the fourth element of felonious assault would be met by a finding that the defendant used an item resembling a handgun that the victim perceived as a real handgun. Petitioner argues that the court's error resulted in a denial of his right to a properly instructed jury under the Sixth and Fourteenth Amendments. Defendant contends that Petitioner has procedurally defaulted his first ground for habeas relief.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to

bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 126 S. Ct. 2064, 2076 (2006)*; Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case, such as where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 126 S. Ct. at 2076-77. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Upon receiving the jury's question, the trial court initially was inclined to answer by way of a simple "Yes." Defense counsel requested that the court re-read the entire felonious assault instruction to the jury. (Tr. IV, 11.) After substantial discussion on the record with counsel, the court took a recess to review the case law. (Tr. IV, 11-16.) The court went back on the record, stating that a simple answer of "Yes" was not proper and that the instruction would be read back to the jury in its entirety. (Tr. IV, 16-17.) Both the prosecutor and defense counsel expressed

- 8 -

agreement with the proposed response. (Tr. IV, 17.) The Court therefore re-read the entire felonious assault instruction. (Tr. IV, 17-19.)

The Michigan Court of Appeals rejected Petitioner's claim of error, holding that Petitioner had affirmatively waived – not merely forfeited – his right to review on appeal. (MCOA Op. at 2.) Petitioner did not merely fail to object to the court's response to the jury question. Instead, he specifically requested that the court read the entire instruction and affirmatively expressed acceptance of the court's decision. As a consequence, the court of appeals, relying on *People v. Carter*, 612 N.W.2d 144, 149 (Mich. 2006), declined to review the instruction, even for plain error. (MCOA Op. at 2.)

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category." *Id.*

At the time of Petitioner's trial, the Michigan courts had clearly established that a party who intentionally relinquishes an objection to a jury instruction by expressing satisfaction with the instruction has affirmatively waived rather than merely forfeited the right to claim error on appeal. *Carter*, 612 N.W.2d at 149-50 (applying the waiver rule in the context of a jury instruction); *People v. Hall (On Remand)*, 671 N.W.2d 545, 547 (Mich. Ct. App. 2003). Under clearly established Michigan law, waived instructional errors are not subject to review even for plain error.

- 9 -

*Carter*, 612 N.W.2d at 149-50. The rule was well established, and the court of appeals relied upon the rule in rejecting Plaintiff's claim.

Moreover, even if Petitioner had merely forfeited rather than waived his objection, it would remain procedurally barred on habeas review. It is clear that the contemporaneous objection rule regarding jury instructions was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985); *People v. Curry*, 437 N.W.2d 310, 314 (Mich. Ct. App. 1989); *People v. Kendrick*, 195 N.W.2d 896 (Mich. Ct. App. 1972). This contemporaneous objection rule serves an important State interest in ensuring that counsel do their part in preventing trial courts from providing juries with erroneous instructions. *See Osborne v. Ohio*, 495 U.S. 103, 123 (1990) (holding that failure to urge the trial court to instruct was an adequate state law ground to prevent reaching the federal claim).

When a petitioner has procedurally defaulted in the state courts, the federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation or can show actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 485; *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). To show cause sufficient to excuse a failure to object, Petitioner must point to "some objective factor external to the defense" that prevented him making and preserving a proper objection to the trial court's response to the jury's question. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner has not attempted to identify such an objective, external factor. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner also has not demonstrated that manifest injustice would

result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).   This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"   *Coleman*, 244 F.3d at 540 (quoting *Schlup*, 513 U.S. at 329). Accordingly, I conclude that Petitioner's first ground for habeas relief is procedurally defaulted.

II.   Ground Two: Sentencing Error

In his second ground for habeas relief, Petitioner argues that the trial court committed sentencing error by scoring Offense Variable 1 (OV1), "aggravated use of a weapon," at 15 points based on a conclusion that a "firearm was pointed at or toward a victim."  He further argues that the trial court improperly scored OV2, "lethal potential of the weapon possessed," at five points. Petitioner contends that the trial court's findings on both variables was at odds with the jury's verdict of acquittal on the charge of possession of a firearm during the commission of a felony.  He alleges that the trial court's findings that conflict with the jury verdict violate both the Sixth and Fourteenth Amendments.

Claims concerning the improper scoring of the advisory Michigan sentencing guidelines are state law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not

- 11 -

cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). A criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). *See also Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (same); *Doyle*, 347 F. Supp. 2d at 485 (a habeas court could set aside, "on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it,

"found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

The state court of appeals concluded that the scoring of sentencing guidelines need not be consistent with the jury verdict. *See People v. Perez*, 662 N.W.2d 446 (Mich. Ct. App.), *vacated in part on other grds*, 670 N.W.2d 655 (Mich. 2003); *Bellamy v. Curtin*, No. 1:06-cv-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007). On review, the court of appeals found that the sentencing court's factual determination was amply supported by the testimony of three witnesses who testified to having seen a gun. (MCOA Op. at 3.) State court factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner fails to either argue or demonstrate that the witnesses' testimony was materially false. As a consequence, Petitioner has failed to demonstrate entitlement to relief on his Fourteenth Amendment claim.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:  February 26, 2008                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).